**FILED**

MAR 1 0 2009
3-10-09
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

NF.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. **09 CR 216** |
| | ) |
| DARLENE SMITH | ) Violation: Title 18, United States |
| aka "Sandy Rainge" | ) Code, Section 1341 |
| | ) |
| | ) |
| | ) **INFORMATION** |
| | ) |

*JUDGE MANNING*

*MAGISTRATE JUDGE DENLOW*

The UNITED STATES ATTORNEY charges:

1.     At times material to this information:

a.     The Illinois Department of Human Services ("IDHS") was a state agency responsible for providing Illinois residents transitioning from welfare to work and economic independence with a variety of community-based services, including affordable child care.

b.     The Child Care Assistance Program ("CCAP") was an IDHS program designed to provide low-income, working families with affordable child care. The CCAP required eligible families to pay a portion of the cost of child care on a sliding scale according to family size, income and number of children in care. Through CCAP, the State of Illinois paid the remaining cost of child care services.

c.     Action for Children ("AFC"), formerly known as the Day Care Action Council of Illinois, was a resource referral agency, located in Cook County, contracted by the Illinois Department of Human Services to oversee and administer the CCAP.

d. Pursuant to CCAP guidelines, eligibility for assistance for child care services was determined based on certain factors, including family size, income of applicants and number of children in daycare. Each applicant requesting child care benefits on behalf of his or her child(ren) was required to submit an IDHS Child Care Application ("the application"). The application required an applicant to provide information, including the applicant's work information, i.e., his or her employer, hourly or yearly wage, work schedule; income information and family information, including the name of each child for whom the applicant was seeking child care payments and family size. An unemployed applicant was not eligible to receive child care assistance.

e. The IDHS application also required the potential daycare provider to submit "provider information," including the child care arrangement setting forth the name of the child(ren) to be cared for by the provider and schedule of child care.

f. Once AFC determined the applicant was eligible for childcare assistance, the applicant was then eligible to receive financial assistance as an approved client.

g. Each client eligible for financial assistance was required to make a co-payment for childcare services directly to the childcare provider. The childcare provider submitted a "Child Care Certificate Report," or voucher, to AFC seeking payment for the remaining value of childcare services provided to the client.

2

h.     Upon receipt of the certificate from the provider, AFC processed the child care certificate report and, if approved, caused a check to be issued from the State Comptroller for the payment of day care services.

i.     Defendant DARLENE SMITH was a resident of Illinois and a principal in several day care centers, including Education Station and Trinity Christian Outreach Program, doing business as Branch of the Vine.

j.     Education Station ("ES") was a day care facility, located in South Holland, Illinois, which provided before and after school child care services and summer camp programs.

k.     Trinity Christian Outreach, doing business as Branch of the Vine Olympian Ministry Outreach ("BOV"), was a day care facility located in Calumet City, which provided before and after school child care services and summer camp programs.

l.     Individual A was employed by AFC as a Family Resources Manager.

m.     Individual B was a an employee at ES and principal in BOV.

2.     Between no later than approximately January 2003 and August 2006 at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DARLENE SMITH, also known as "SANDY RAINGE,"

defendant herein, together with Individual A, Individual B, and others known and unknown, devised and intended to devise, and participated in, a scheme to defraud and to obtain money and property from the State of Illinois by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.     It was part of the scheme that defendant SMITH knowingly prepared and submitted false applications on behalf of parents seeking approval from AFC as an eligible client. Defendant SMITH knew that many of the applications contained false information regarding a client's employment, income, the days, hours, time period and/or fact of attendance of a child at the day care center or the number and names of children attending the day care center.

4.     It was further part of the scheme that defendant SMITH provided applications to existing and potential day care clients so that clients would apply to receive the state subsidy. It was further part of the scheme that defendant SMITH provided potential clients with a blank application for his or her signature which defendant SMITH subsequently completed by knowingly providing false information on behalf of the client.

5.     It was further part of the scheme that defendant SMITH falsely told certain clients that tuition in her day care programs was free to the parent or that no co-payment was required, and that the government paid defendant SMITH for the day care services provided when, in fact, defendant SMITH knew that she was required to collect a co-payment from each client receiving child care benefits.

6.     It was further part of the scheme that defendant SMITH knowingly submitted fraudulent child care certificate reports to AFC which falsely represented the names of children in attendance at the day care center, the number of days attended or whether the child attended full or part-time, in order to receive payments to which she was not entitled. Defendant SMITH falsely

4

certified that the information contained in the Child Care Certificate Report was complete and accurate.

7.      It was further part of the scheme that on or about May 1, 2003, defendant SMITH knowingly submitted an application for subsidy payments on behalf of Individual C which defendant SMITH knew falsely represented a child care arrangement between Individual C and ES, including days of attendance and hours in child care.

8.      It was further part of the scheme that on or about September 26, 2005, defendant SMITH knowingly submitted an application for subsidy payments on behalf of Individual C which defendant SMITH knew falsely represented Individual C's employer and wages. Defendant SMITH knew that the application also falsely represented a child care arrangement between Individual C and BOV.

9.      It was further part of the scheme that on or about November 4, 2005, defendant SMITH knowingly submitted a Child Care Certificate Report to AFC which falsely represented that Child A, B and C each attended BOV on a full-time basis for approximately 25 days in October 2005.

10.     It was further part of the scheme that on or about December 13, 2005, defendant SMITH knowingly submitted a Child Care Certificate Report to AFC which falsely represented that Child A, B and C each attended BOV on a full-time basis for 26 days in November 2005.

11.     It was further part of the scheme that on or about January 4, 2006, defendant SMITH

knowingly submitted a Child Care Certificate Report to AFC which falsely represented that Child A, B and C each attended BOV on a full-time basis for 26 days in December 2005.

12.    It was further part of the scheme that on or about February 1, 2006, defendant SMITH knowingly submitted a Child Care Certificate Report to AFC which falsely represented that Child A attended BOV on a full-time basis for 26 days in January 2006.

13.    It was further part of the scheme that defendant SMITH sought and obtained the assistance of Individual A who was employed by AFC in order to expedite the processing and ensure approval of client applications.

14.    It was further part of the scheme that Individual A, in his capacity as a Family Resources Manager, approved paperwork, including client applications and child care certificate reports submitted by defendant SMITH on behalf of ES.

15.    It was further part of the scheme that defendant SMITH and her co-schemers caused IDHS to pay $113,370 to ES based on the fraudulent certificates submitted to AFC which defendant SMITH knew contained false representations.

16.    It was further part of the scheme that defendant SMITH and her co-schemers caused IDHS to pay in excess of $114,903 to BOV based on the fraudulent certificates submitted to AFC, which defendant SMITH knew contained false representations.

17.    It was further part of the scheme that defendant SMITH and her co-schemers misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of the aforementioned scheme.

6

18.    On or about, November 18, 2005, at Calumet City, in the Northern District of

Illinois, and elsewhere,

DARLENE SMITH, also known as "SANDY RAINGE,"

defendant herein, for the purpose of executing the aforesaid scheme, and attempting to do so, did

knowingly cause to be delivered by United States mail, according to the directions thereon, an

envelope sent from the Treasurer of the State of Illinois in Springfield, Illinois to Branch of the

Vine Olympian, in Calumet City, which envelope contained a check in the amount of $1510.93;

In violation of Title 18, United States Code, Section 1341.

UNITED STATES ATTORNEY